UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FAST ENTERPRISES, LLC, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 16-cv-12149-ADB |
| STEPHANIE POLLACK, | * |
| Defendant. | * |

**MEMORANDUM AND ORDER**
**GRANTING MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiff Fast Enterprises, LLC ("FAST") filed this action seeking to prevent Defendant Stephanie Pollack, in her capacity as Secretary and CEO of the Massachusetts Department of Transportation ("MassDOT"), from disclosing FAST's trade secrets. FAST submitted bid proposal documents that contain trade secrets in response to a Request for Proposals ("RFP") issued by the MassDOT Registry of Motor Vehicles ("RMV"). Some of FAST's competitors and a reporter for a local television station requested the FAST documents under the Massachusetts public records law, Mass. Gen. Laws ch. 4, § 7. Now before the Court is Pollack's motion to dismiss for lack of subject matter jurisdiction. [ECF No. 43]. For the reasons set forth below, the motion is granted.

**I.    BACKGROUND**

FAST is a limited liability corporation organized under the laws of the State of New York, with a principal place of business in Centennial, Colorado. MassDOT is a political subdivision of the Commonwealth of Massachusetts, and has its principal office and place of business in Boston, Massachusetts.

FAST designs, installs, and implements integrated computer software systems used primarily by various governmental departments and agencies. The software system at issue in this case is called the "FAST DS-VS," which assists in the administration of driver and vehicle services for state motor vehicle agencies. On June 20, 2016, FAST submitted a bid proposal in response to the RMV's Division Core System Replacement Request for Proposals Bid Number BD-16-1030-OR100-OR011-00000007660.[1] The bid proposal was for the replacement of the RMV's core computer system. FAST asserts that its bid proposal contained confidential and proprietary information regarding the functionality and operation of the system that it proposed to install. FAST contends that this functionality and operability makes its system unique and provides it with a competitive advantage over its competitors. FAST included a table on page 1 of its bid proposal entitled "Notice of Trade Secrets and Proprietary and Confidential Information" which identified the sections and pages in the proposal documents that contained purportedly confidential information.[2]

On October 3, 2016, MassDOT sent FAST an email informing FAST that MassDOT had received a public records request for the FAST bid proposal documents. FAST's in-house counsel, David Bishop, responded to MassDOT, and an email exchange ensued in which Mr. Bishop expressed FAST's position that the bid documents could not be disclosed without redaction of the claimed trade secrets and confidential information, while MassDOT asserted that the unredacted records were subject to disclosure under the Massachusetts public records law,

---

[1] The front page of the RFP stated, in all capital letters, that "all responses [to the RFP] including the winning bid shall become public record as of the date of the contract . . . any portions of a response that are labeled as confidential will still be considered public record unless excepted under applicable law." This fact was not included in the complaint, however, so the Court has not considered it on the present motion to dismiss.

[2] FAST was awarded the contract for the RMV's core system replacement on October 13, 2016.

2

Mass. Gen. Laws ch. 4, § 7. FAST subsequently engaged litigation counsel, who continued to advocate against disclosure of the records. MassDOT agreed to wait until October 24, 2016, before releasing FAST's bid proposal documents.

FAST filed this lawsuit on October 24, 2016 [ECF No. 1] and moved for a preliminary injunction on November 14, 2016. [ECF No. 13].[3] Pollack filed a motion to dismiss on December 5, 2016. [ECF No. 17]. The Court held a motion hearing on January 5, 2017, where it granted the preliminary injunction motion in part. [ECF No. 22]. The Court then held a scheduling conference on August 9, 2017 [ECF No. 32] and a status conference on November 28, 2017 [ECF No. 39], at which the parties discussed their efforts to reach a settlement.[4] Due to the parties' ongoing settlement negotiations, the Court denied Pollack's initial motion to dismiss without prejudice and with leave to renew. [ECF No. 35]. At the November 28, 2017 conference, the Court asked the parties to address whether this Court can exercise subject matter jurisdiction over this case. Subsequently, Pollack filed a motion to dismiss due to lack of subject matter jurisdiction [ECF No. 43], which FAST opposes [ECF No. 46].

## II. DISCUSSION

FAST contends that the Court has subject matter jurisdiction over this case pursuant to the 2016 Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, which creates a federal cause of action for the misappropriation of trade secrets. Pollack asserts that the DTSA

---

[3] FAST filed a motion for a temporary restraining order along with the complaint [ECF No. 3], which the Court denied as moot after FAST filed its preliminary injunction motion. [ECF No. 16].

[4] At the August and November conferences, the Court informed the parties that it was considering certifying a question to the Massachusetts Supreme Judicial Court, and it allowed the parties to submit objections or suggest modifications to the proposed question. [ECF No. 40].

does not grant jurisdiction in these circumstances.[5] The DTSA authorizes the "owner of a trade secret that is misappropriated" to bring a civil action, 18 U.S.C. § 1836(b)(1), and grants the United States district courts original jurisdiction over such cases, id. at § 1836(c). The DTSA contains a limitation on that jurisdictional grant, however, as it "does not prohibit or create a private right of action" in regard to "any otherwise lawful activity conducted by a governmental entity of . . . a State." 18 U.S.C. § 1833(a)(1). Pollack contends that the release of the records at issue is an "otherwise lawful activity," and thus the Court has no jurisdiction here. Neither party has cited a case discussing this particular issue, nor is the Court aware of any, which is not surprising given that the law was enacted only a little more than two years ago.

FAST argues that disclosure of the records at issue here would violate the DTSA. Under the Massachusetts public records law, documents must be disclosed unless they are "specifically or by necessary implication exempted from disclosure by statute," Mass. Gen. Laws ch. 4, § 7(26)(a). In FAST's view, the DTSA is a statute that exempts the documents from disclosure. FAST, however, does not assert that Massachusetts state law would have exempted the records from disclosure prior to the enactment of the DTSA, or that any other provision of Massachusetts law prevents the records from being disclosed.[6]

Pollack replies by asserting that the disclosure of the records would be lawful in the absence of the DTSA, and thus the "otherwise lawful" language of the DTSA precludes

---

[5] FAST explicitly disavows any argument that the Court has diversity jurisdiction over this case. Pollack notes that, where a state is the real party in interest to an action, that state is "not a 'citizen' for purposes of diversity jurisdiction," and thus its presence negates diversity jurisdiction. See In re Fresenius Granuflo/NaturaLyte Dialysate Prod. Liab. Litig., 76 F. Supp. 3d 268, 271–73 (D. Mass. 2015) (quoting Moor v. Alameda County, 411 U.S. 693, 717 (1973)).
[6] Massachusetts law is somewhat unique in that it exempts trade secrets from disclosure where they are "voluntarily provided to an agency for use in developing governmental policy and upon a promise of confidentiality," but not where the information is submitted "as a condition of receiving a governmental contract or other benefit." Mass. Gen. Laws 4, § 7(26)(g).

jurisdiction. The Court notes that the "otherwise lawful" language applies only to the activities of governmental entities, not private parties, and thus it appears that Congress specifically intended to circumscribe the DTSA so it would not interfere with the policy choices made by state governments in regard to their own operations.

FAST argues that the legislative history behind the statutory scheme at issue indicates that Congress did not intend this result. The "otherwise lawful" language originated with the Economic Espionage Act (EEA) of 1996, Pub. L. No. 104-294, 110 Stat. 3488 (Oct. 11, 1996), which criminalized the theft or misappropriation of trade secrets. FAST points out that a Congressional report concerning this legislation explained that the provision was included to make clear that the EEA did not proscribe any "lawfully authorized investigative, protective, or intelligence activity," H.R. Rep. 104-788, at 14 (1996), and asserts that this means that only these specifically enumerated governmental activities are exempt from the scope of the law. Even aside from the fact that this requires the Court to go well beyond the statutory language, this interpretation strains the text of the report. The sentence cited by FAST is preceded by a more general statement that the EEA "does not prohibit, and is not to be deemed to impair, *any* otherwise lawful activity conducted by an agency or instrumentality of . . . a State." Id. (emphasis added). Further, FAST has not pointed to any legislative history concerning the DTSA that suggests that Congress contemplated incorporating this concept or intended that the passage of the DTSA would impact "otherwise lawful" state activity. Absent a clear indication that Congress intended to circumscribe the universe of "otherwise lawful" state activity, the Court must read the statute as it is worded, and the text of the statute contains no such limitation.

FAST also notes that the "otherwise lawful activity" exemption applies only to the activities of a state, and argues that because the defendant is Pollack, not the state of

Massachusetts, this case does not fall within the exemption. Again, because the DTSA was passed so recently, courts have not yet had the opportunity to weigh in on this question. "[T]he Ex Parte Young doctrine permits suits to proceed against state officers in their official capacities to compel them to comply with federal law." Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 477–78 (1st Cir. 2009) (citing Ex Parte Young, 209 U.S. 123, 126 (1908)). In the context of other laws, such as the Americans with Disabilities Act, courts have determined that a suit against a defendant in his or her official capacity "is, for all intents and purposes, against the state . . . as the real party-in-interest." Mingus v. Butler, 591 F.3d 474, 482 (6th Cir. 2010); see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (In a 42 U.S.C. § 1983 case, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (citation omitted)). Here, Pollack, who is sued in her official capacity, is the individual who is "conduct[ing]" the activities of the state and working on behalf of the state to fulfill its legal obligations, and she is being sued to enjoin her activities on behalf of the state, not as a private citizen. Moreover, FAST seemingly only sued Pollack to prevent the state from disclosing the information, because the state has sovereign immunity and thus could not itself be sued. Therefore, the Court concludes that the state of Massachusetts is the real party-in-interest, and that the DTSA does not permit a suit against Pollack where the action that FAST is seeking to enjoin is the "otherwise lawful" activity of the state of Massachusetts.

Finally, FAST asserts that the purpose of the DTSA was to "provide a single, national standard for trade secret misappropriation with clear rules and predictability for everyone involved," H.R. Rep. No. 114-529, at 6 (2016), and notes that, to achieve the goal of uniformity, the DTSA was modeled on the Uniform Trade Secrets Act ("UTSA"), S. Rep. No. 114-220, at 3

6

(2016), which has been adopted by 48 states, but not Massachusetts. FAST contends throughout its brief that Pollack's assertion that the DTSA does not create a cause of action in this case is "absurd, illogical," and contrary to the Congressional intent in enacting the DTSA. Nonetheless, the exemption at issue here applies only to the actions of federal, state, and local government entities and it is entirely reasonable to read the statute as demonstrating that Congress did not intend for the DTSA to abrogate state sovereign immunity or to otherwise interfere with lawful policy decisions made by state legislatures concerning the activities of the state. Thus, based on the plain text of the DTSA and the claims advanced by FAST, the Court must conclude that FAST seeks to enjoin the "otherwise lawful" activity of the state of Massachusetts, and because the DTSA does not create a cause of action in such circumstances, the case is dismissed.

Although the Court fully sympathizes with FAST and cannot help but wonder why the state would require the disclosure of proprietary bid information given the impact that it could have on future bid solicitations, it is constrained by the applicable statutes. Ultimately, as the federal statute does not provide for a cause of action in these circumstances, this issue must be resolved by the state courts or the state legislature.

### III. CONCLUSION

Accordingly, Pollack's motion to dismiss [ECF No. 43] is <u>GRANTED</u>.

**SO ORDERED.**

September 21, 2018                              /s/ Allison D. Burroughs
                                                                                    ALLISON D. BURROUGHS
                                                                                    U.S. DISTRICT JUDGE